UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DY HEIGHTS LLC,

                    Plaintiffs,

-against-

CONSULATE GENERAL OF THE DOMINICAN REPUBLIC AND THE DOMINICAN REPUBLIC,

                    Defendants.

## COMPLAINT

1.     Plaintiff DY Heights LLC (the "Plaintiff") by counsel, The Votaw Law Firm PLLC, as and for a complaint int his action against the defendants Consulate General of the Dominican Republic (the "Consulate") and The Dominican Republic (collectively with the Consulate, the "Defendants"), hereby alleges as follows:

## NATURE OF THE CLAIMS

2.     This lawsuit alleges that Defendants have breached a commercial lease agreement, whereby the Consulate agreed to lease the commercial space "Floor 4" in the building located at 90 Laurel Hill Terrace, New York, New York 10033 (the "Commercial Space"). The Consulate agreed to lease the space for a period of five years, commencing on July 1, 2023 and ending on June 30, 2028. Abruptly, and without Plaintiff's knowledge or consent, the Consulate notified Plaintiff that it would abandon the Commercial Space years prior to the lease expiration date. This lawsuit seeks recovery for the damages inflicted upon Plaintiff as a result of this abandonment.

## JURISDICTION AND VENUE

3.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1330, which grants the United States District Courts original jurisdiction over any civil action against a foreign state, so long as the foreign state is not entitled to immunity under the Foreign Sovereign

Immunities Act ("FSIA").  As set forth below, Defendants are not immune from suit in this case by virtue of FSIA's exceptions for commercial activities.

4. Defendants are subject to suit under the FSIA because their acts at issue constitute commercial activity carried on in the United States. Specifically, the claims in this action are based upon Defendants' execution and breach of a commercial lease for real property in New York. Under 28 U.S.C. § 1605(a)(2), a foreign state is not immune from jurisdiction in any case "based upon a commercial activity carried on in the United States by the foreign state." Moreover, the lease was a standard commercial office lease, containing terms and conditions commonly found in arm's-length transactions between private parties in the New York real estate market.

5. In addition, to the extent necessary, Plaintiff pleads that the lease itself contains provisions amounting to an implicit waiver of sovereign immunity. The lease is expressly governed by New York law and contemplates performance in New York, which U.S. courts have found can constitute an implicit waiver of FSIA immunity under 28 U.S.C. § 1605(a)(1).

6. This Court also has personal jurisdiction over the Defendants pursuant to 28 U.S.C. § 1330(b). Defendants are subject to personal jurisdiction in the United States under the FSIA so long as service is made pursuant to 28 U.S.C. § 1608.  Plaintiff will effect service in accordance with those statutory requirements, thereby establishing personal jurisdiction over the foreign-state Defendants.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391(f)(1). A substantial part of the events or omissions giving rise to the claim occurred in this District, and the property that is the subject of the action (the leased Premises) is situated in this District. Specifically, the lease was for premises located in New York County (Manhattan) within the Southern District of New York, and the breaches and injuries occurred here.

**PARTIES**

8.　　Plaintiff DY Heights LLC is a limited liability company organized under the laws of the State of New York. Plaintiff is the owner and landlord of the Commercial Space located at 90 Laurel Hill Terrace, New York, NY 10033 (the "Premises").

9.　　Defendant Consulate General of the Dominican Republic is the official consular mission of the Dominican Republic in New York. The Consulate was the tenant under the commercial lease agreement described below and acted as an agent or instrumentality of the Dominican Republic in executing that lease.

10.　　Defendant Dominican Republic is a foreign sovereign state. For purposes of this action and the Foreign Sovereign Immunities Act ("FSIA"), the Dominican Republic and its Consulate are considered a "foreign state" or its political subdivision, agency, or instrumentality (28 U.S.C. § 1603). The Dominican Republic is named as a defendant to ensure full relief can be afforded, and as the sovereign principal of the Consulate's obligations under the lease.

**ALLEGATIONS COMMON TO ALL CAUSES OF ACTION**

11.　　On or about June 1, 2023, Plaintiff, as landlord, and the Consulate, as commercial tenant, agreed to lease the commercial office on the fourth floor of the Premises for the period from July 1, 2023 through June 30, 2028 (coupled with the riders attached thereto, collectively the "Lease").

12.　　Under the Lease, the Consulate agreed to pay rent and occupy the Premises for the full duration of the 5-year term. The Lease included a schedule of base monthly rent for each year of the term (see Exhibit A to the Lease). In general, the base rent was subject to modest annual

increases. For example, during the lease year July 1, 2025 through June 30, 2026, the base rent was $7,725.00 per month; it increased to $7,956.75 per month for the following year, and $8,195.45 per month for the final year (July 1, 2027 – June 30, 2028)[7]. The total rent that would have become due over the entire remaining term from July 2025 through June 2028 equaled $278,801.43. This rent schedule was a material part of the bargained-for consideration under the Lease:

13. The Lease does not contain an express acceleration clause that automatically makes all future rent immediately due upon default. However, the Lease does provide that the landlord is entitled to recover all damages caused by the tenant's breach, including unpaid rent. The Lease also includes an attorneys' fees provision, under which the prevailing party (or specifically the landlord, as applicable) is entitled to recover reasonable attorneys' fees and legal costs incurred in enforcing the lease or collecting sums due. Plaintiff specifically relies on that attorneys' fee covenant in seeking its fees herein.

14. Plaintiff fully performed all of its obligations under the Lease. Among other things, Plaintiff delivered possession of the Premises to the Consulate and maintained the property as required. The Consulate took possession and occupied the Premises for a period of time, and Plaintiff did not materially breach any term of the Lease at any point. All conditions precedent to the Consulate's duty to perform under the Lease were satisfied.

15. Despite the Lease's five-year term, the Consulate vacated the Premises early, on or about July 31, 2025, roughly three years before the Lease's scheduled expiration. The Consulate provided notice of its intent to vacate, citing a directive from the United States Department of State as the reason for this early departure. In essence, Defendants asserted that the U.S. State

Department had directed the Consulate to relocate or cease its tenancy at the Premises, and the Consulate thus decided to terminate its occupancy as of the end of July 2025.

16. Plaintiff did not consent to any early termination of the Lease and was not a party to whatever understanding the Consulate had with the State Department. The Lease itself contains no clause that would permit the tenant to unilaterally terminate the lease due to a governmental directive or for convenience. Therefore, the Consulate's abandonment of the Premises in July 2025 constituted a breach of the Lease and a wrongful repudiation of the Consulate's remaining obligations.

17. Upon learning of the Consulate's intent to vacate and the subsequent vacatur, Plaintiff elected to treat the Consulate's actions as an anticipatory breach and surrender of the Lease, which Plaintiff accepted. In other words, Plaintiff chose to terminate the Lease as of July 31, 2025 due to Defendants' repudiation, rather than keeping the Lease alive for periodic rent accrual. This election was made in order to mitigate damages and to immediately seek recovery of the full remaining rent as contract damages. Plaintiff promptly re-entered and took possession of the Premises after the Consulate's departure, without waiving any of its rights to damages.

18. As a direct result of Defendants' early vacatur and breach of the Lease, Plaintiff has been deprived of the benefit of the remaining 35 months of the lease term (August 2025 through June 2028). The total base rent that would have been payable for that remaining term is $278,801.43, as calculated under the Lease's rent schedule. This amount represents the bargain that Plaintiff struck – i.e. the stream of rental payments through June 2028 – which has been lost due to Defendants' breach. Defendants have made no further rent payments to Plaintiff after vacating and have failed to pay any portion of the rent due for August 2025 or any month thereafter.

19. In addition to base rent, Plaintiff may also be entitled to additional sums under the Lease, such as any unpaid additional rent, late fees, or other charges that had accrued prior to termination. All such amounts, if any, are modest in comparison to the base rent claim and will be addressed in the course of this litigation. For purposes of this Complaint, Plaintiff's primary claim for contract damages is the unpaid base rent for the balance of the term, $278,801.43, which Plaintiff now seeks to recover in full as a lump-sum damage award.

20. The Lease's attorney's fee provision obligates the tenant to reimburse the landlord for the costs and expenses, including reasonable attorneys' fees, incurred in enforcing the tenant's obligations. Accordingly, Plaintiff has also incurred liability for attorneys' fees by hiring counsel and pursuing its legal remedies to address Defendants' breach. Plaintiff put Defendants on notice, via a formal demand letter, that it would seek to recover all unpaid rent, contractual damages, interest, and attorneys' fees as provided in the Lease if a lawsuit became necessary. Defendants have refused to cure their default. It has therefore become necessary for Plaintiff to file this suit, and Plaintiff is entitled to recover its attorneys' fees and costs in accordance with the Lease.

21. Under New York law and general principles of contract damages, Plaintiff is entitled to prejudgment interest on the sums due. Plaintiff intends to seek pre-judgment interest at the statutory rate (where applicable) or at such rate and from such accrual date as the Court deems just and proper, to fully compensate Plaintiff for the time value of the money that has been wrongfully withheld.

**FIRST CAUSE OF ACTION**
*(BREACH OF CONTRACT)*

22. Plaintiff realleges and incorporates by reference all allegations set forth in Paragraphs 1 through 21 above as if fully set forth herein.

23. The Lease between Plaintiff and the Consulate is a valid and binding written contract, supported by adequate consideration. Plaintiff (landlord) and Defendants (tenant, through the Consulate) willingly entered into the Lease, and the Lease embodies clear obligations for each party, including Defendants' obligation to pay rent for the full term and to not abandon the Premises prior to lease expiration.

24. Plaintiff has fully performed its obligations under the Lease, or performance has been excused by Defendants' prior breach. All conditions required of Plaintiff, if any, have been satisfied. Plaintiff at all relevant times was ready, willing, and able to continue performing under the Lease through the end of the term.

25. Defendants materially breached the Lease by vacating the Premises around July 31, 2025 and unequivocally repudiating any further performance of their rent payment and occupancy obligations. Defendants failed to pay the rent and other charges that came due after their abandonment of the Premises, despite those amounts being due and owing under the Lease. Defendants' conduct deprived Plaintiff of the benefit of the bargain and constituted a failure to perform that is not excused by any provision of the Lease or any law.

26. As a direct and proximate result of Defendants' breach of contract, Plaintiff has sustained significant damages. Plaintiff's damages include, but are not limited to, the loss of all remaining rent payments that would have been made had Defendants honored the Lease through June 30, 2028. The total rent for the balance of the term (August 2025–June 2028) is $278,801.43, which sum is now due and owing to Plaintiff as contract damages. Plaintiff's damages also include any other unpaid amounts due under the Lease prior to termination, and the consequential costs of re-letting or attempting to re-let the Premises (to the extent mitigation is required or proven

feasible). Plaintiff has engaged the services of a commercial real estate broker to market the Premises for re-rental, and has actively and continuously marketed the Premises.

27. Further, under the express terms of the Lease, Plaintiff is entitled to recover its reasonable attorneys' fees and costs incurred in enforcing the Lease and collecting the amounts due. Defendants' breach has caused Plaintiff to incur liability for such fees and costs. Accordingly, Plaintiff seeks an award of attorneys' fees and costs in an amount to be determined, pursuant to the Lease's fee-shifting provision and applicable law.

28. Plaintiff is also entitled to pre-judgment interest on the foregoing damages at the maximum rate allowed by law, accruing from the date of Defendants' breach (or from each rent due date as appropriate) until the date of judgment. An award of interest is necessary to fully compensate Plaintiff for Defendants' breach and to prevent Defendants from benefiting from the time-value of money wrongfully withheld.

## **SECOND CAUSE OF ACTION**
*(ANTICIPATORY REPUDIATION)*

29. Plaintiff realleges and incorporates by reference all allegations set forth in Paragraphs 1 through 28 above as if fully set forth herein.

30. Defendants, through their acts and statements, anticipatorily repudiated the Lease prior to the time that their full performance was due. In or about July 2025, during the lease term, Defendants communicated an unequivocal intent to permanently cease performance of the Lease – specifically, an intent to vacate the Premises and to stop paying rent for the remainder of the term. Defendants manifested a clear and definite refusal to fulfill their future obligations under the Lease, despite the term extending to June 2028.

31. Defendants' anticipatory repudiation was evidenced by the Consulate's formal notice of intent to vacate (citing a State Department directive) and by the Consulate's actions in

actually vacating the Premises on July 31, 2025. These actions occurred well before the date when Defendants' performance under the Lease would have been completed, and they signaled Defendants' unwillingness to honor the Lease going forward.

32. Upon Defendants' anticipatory breach, Plaintiff was entitled to treat the Lease as terminated and to immediately seek damages, without waiting for each future rent installment to come due. Plaintiff exercised its right to terminate as of July 31, 2025 and provided notice (through counsel's communications) that it would hold Defendants liable for the full remaining rent as damages. By accepting Defendants' repudiation and terminating the Lease, Plaintiff fulfilled any requirement of clear and unequivocal acceptance of the anticipatory breach.

33. Defendants' repudiation and abandonment of the Lease were without legal justification. The reason cited (a governmental directive) did not legally excuse performance of a private commercial lease, and no force majeure or similar clause in the Lease absolved Defendants of liability. Thus, Defendants are liable for breach of contract based on their anticipatory repudiation of the Lease.

34. As a result of the anticipatory breach, Plaintiff has suffered damages equivalent to those described in Count I. Upon repudiation, the remaining rent for the balance of the term became recoverable as a lump-sum contract damage. That amount, as stated, is $278,801.43, representing the present value of the rent due from August 2025 through June 2028 (subject to any appropriate credits or mitigation). Plaintiff also seeks all other available damages proximately caused by the anticipatory breach, including additional rent or charges due under the Lease, the costs of reletting, and its attorneys' fees and costs of enforcement.

35. Plaintiff further seeks an award of pre-judgment interest on all damages resulting from the anticipatory repudiation, at the statutory rate or as otherwise permitted by law, from the

date of Defendants' repudiation. Such interest is warranted to fully compensate Plaintiff and to account for the delay in receiving the contract benefits that were due,

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs respectfully requests that the Court enter a judgment against the Defendants, jointly and severally, in favor of Plaintiff that contains the following relief:

A. An award of monetary damages in the amount of $278,801.43, or such other amount as the evidence may establish, representing the full balance of unpaid rent and related charges due for the remainder of the lease term, as a result of Defendants' breach of contract;

B. An award of Plaintiff's reasonable attorneys' fees, litigation expenses, and costs incurred in connection with this action, pursuant to the Lease's contractual fee provision and applicable law;

C. An award of pre-judgment interest on all sums awarded, at the maximum rate allowed by law, accruing from the date of Defendants' breach (and/or each date a rent payment would have become due) until the entry of judgment;

D. An award of post-judgment interest as provided by 28 U.S.C. § 1961, and such other and further relief as the Court deems just, equitable, and proper under the circumstances.

Dated: New York, New York
       October 22, 2025

                            Respectfully submitted,

                            **THE VOTAW LAW FIRM, PLLC**

By: _/s/ Joshua Votaw_____
JOSHUA J. VOTAW
Attorneys for Plaintiff
419 East 72nd Street
New York, New York 10021
Tel: (917) 830-4079
*Email: joshua.votaw@gmail.com

10